# Central of Georgia Railway Company v. Groesbeck & Armstrong.

## Damage for Loss of Goods.

(Decided January 16, 1912.   57 South. 380.)

1. *Commerce; Interstate; Regulation.*—Acts 1907, p. 225, is violative of article 1, section 8, Constitution of United States, in so far as it may affect cars which may be needed in interstate commerce, or may be used therein, so that they cannot be supplied.

2. *Same; Police Power of States.*—The grant to Congress of the power to regulate interstate commerce, in the absence of action by Congress, does not deprive the states of their police power to impose reasonable regulation on interstate carriers for the protection of the lives, health and safety of the people.

3. *Courts; Decisions; Federal Question.*—A decision by the Supreme Court of the United States that a state statute is an interference with interstate commerce, is binding on the state court.

4. *Statutes; Construction; Validity.*—If there is reasonable doubt as to the validity of the statute the doubt should be resolved in favor of its validity.

Certified question from the Court of Appeals.

Action by Groesbeck & Armstrong against the Central of Georgia Railway Company, for failure to furnish cars to ship goods. Judgment for plaintiff and defendant appeals to the Court of Appeals, which certified the question decided to the Supreme Court. Question answered.

STEINER, CRUM & WEIL, for appellant. No brief reached the Reporter.

R. D. CRAWFORD, for appellee. No brief reached the Reporter.

MAYFIELD, J.—The Court of Appeals have submitted or referred to us the following constitutional question:

"Under the provisions of the statute (Act approved April 18, 1911 [Acts 1911, p. 449] § 1), the following question is hereby submitted to the Supreme Court for determination:

"Are the provisions of the act of the Legislature of Alabama approved February 28, 1907 (Acts 1907, p. 225), providing a penalty to be imposed on railroad companies for failure to deliver freight cars to prospective shippers within a specified time after demand made, violative of or in conflict with that clause of the Constitution of the United States which provides that 'Congress shall have power to regulate commerce with foreign nations and among the several states,' etc. (Const. U. S. § 8, art. 1.), or that provision of the Constitution of the United States which provides that no person shall be deprived of property without due process of law (Const. U. S. art 14 [fourteenth amendment] § 1)?"

We answer that so much of the provisions of the act in question as imposes a penalty on railroad companies for failure to deliver freight cars to prospective shippers within a specified time after demand is made, is, under the decisions of the Supreme Court of the United States (which, of course, control us in this decision), violative of section 8, art. 1, of the Constitution of the United States.

[Central of Georgia Railway Company v. Groesbeck & Armstrong.]

The states possess the power to protect the public health, the public morals, and public safety by any legislation, appropriate to those ends, which does not encroach upon any rights guaranteed by the national and state Constitutions. The mere grant to Congress of the power to regulate interstate commerce did not, of itself and without legislation on the part of Congress, impair the right or authority of the states to establish such reasonable regulations as were appropriate for the protection of the health, the lives, and the safety of the people. The police powers of the state, as great and broad as they are, cannot be exercised, as the Supreme Court of the United States has often decided, in regard to a subject which has been exclusively confided to Congress by the Constitution of the United States. If a state statute invades the domain of legislation which thus belongs by virtue of the national Constitution to Congress, it is void, no matter under what class of powers it may fall, nor how closely allied it may be to powers conceded to belong to the states.—*Henderson v. New York,* 92 U. S. 271, 23 L. Ed. 543; *Smith v. Turner,* 7 How. 408, 12 L. Ed. 702; *Hannibal v. Husen,* 95 U. S. 473, 24 L. Ed. 527; *Brennan v. Titusville,* 153 U. S. 299, 14 Sup. Ct. 829, 38 L. Ed. 719.

And what is and what is not an interference with or regulation of interstate commerce is a question for the final decision of the Supreme Court of the United States, and as to which state courts must yield. The Supreme Court of the United States, in the case of *Houston & Texas Central Railroad Co. v. Hayes,* 201 U. S. 321, 26 Sup. Ct. 491, 50 L. Ed. 772, has construed a Texas statute very much like the one in question, and held that it was void, because in violation of the commerce clause of the federal Constitution. The headnotes to that case read as follows:

"An absolute requirement that a railroaad engaged in interstate commerce shall furnish a certain number of cars on a specified day to transport merchandise to another state, regardless of every other consideration except strikes and other public calamities, transcends the police power of the states and amounts to a burden upon interstate commerce; and articles 4497-5000, Rev. Stat. Texas, being such a requirement, are, when applied to interstate commerce shipments, void as a violation of the commerce clause of the federal Constitution.

"Such a regulation cannot be sustained as to interstate commerce shipments as an exercise of the police power of the state."

It was also held in that case that, until Congress had passed laws regulating interstate commerce, the state could pass reasonable laws as to such subject; but, since Congress had passed laws in minute detail upon the subject, the states were no longer entitled to exercise the power. The court, however, in striking down the Texas statute, said, among other things: "While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers, and to regulate the general subject of speed, length and frequency of stops, for the heating, lighting, and ventilation of passenger cars, the furnishing of feed and water to cattle and other live stock, we think an absolute requirement that a railroad shall furnish a certain number of cars at a specified day, regardless of every other consideration except strikes and other public calamities, transcends the police power of the state and amounts to a burden upon interstate commerce. It makes no exception in cases of a sudden congestion of traffic, an inability to furnish cars by reason of their temporary and unavoidable detention

in other states, or in other places within the same state. It makes no allowance for interference of traffic occasioned by wrecks or other accidents upon the same or other roads, involving a detention of traffic, the breaking of bridges, accidental fires, washouts, or other unavoidable consequences of heavy weather." "While railroad companies may be bound to furnish sufficient cars for their usual and ordinary traffic, cases will inevitably arise where by reason of an unexpected turn in the market, a great public gathering, or an unforseen rush of travel, a pressure upon the road for transportation facilities may arise, which good management and a desire to fulfill all its legal requirements cannot provide for, and against which the statute in question makes no allowance." This decision has been followed in a number of cases, and statutes and regulations of railroad business, similar to the Texas statute, have been stricken down.—See *Southern Ry. Co. v. Commonwealth,* 107 Va. 771, 60 S. E. 70, 17 L. R. A. (N. S.) 364; *McNcill v. Southern R. Co.,* 202 U. S. 543, 26 Sup. St. 722, 50 L. Ed. 1142; *St. Louis, I. M. & S. R. Co. v. Hampton* (C. C.) 162 Fed. 693.

We are unable to see how the statute in question can stand, under the rules of law announced by the Supreme Court of the United States and above quoted. Recognizing the rule of construction, that statutes should never be stricken down by courts, if there is a reasonable doubt as to their validity, we have endeavored to distinguish this statute from the Texas statute condemned in the above case; but we have been unable to do so.

All concur save DOWDELL, C. J., not sitting.